**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

**CHRISTOPHER LACCINOLE**, *on behalf of himself and others similarly situated,*

*Plaintiff,*

v.

**SWIFT HOME LOANS, INC.**,

*Defendants*.

Case No.: ____________________

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## Nature of this Action

1. This action arises out of Defendant, Swift Home Loans, Inc. ("SHL" or "Defendant") illegal telemarketing practices that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA") and the Texas Business and Commerce Code ("TBCC").

2. SHL is a mortgage broker headquartered in Birmingham, Michigan.

3. SHL solicits new customers to purchase mortgage products of its partners, such as United Wholesale Mortgage, LLC ("UWM"), via illegal cold call marketing campaigns.

4. SHL continues to solicit mortgage products even when the called party requests not to be contacted again.

5. SHL does not obtain consent for the solicitations it makes, and upon information and belief, purchases lead lists or other consumer data for their illegal

cold calling campaigns.

6. SHL knows that it engaged in illegal activity because it takes steps to avoid disclosing its identity when soliciting prospective customers.

7. Many of SHL's solicitations were/are made to individuals who have registered their telephone numbers on the National Do-Not-Call Registry – because they did not want these types of telemarketing solicitations.

8. The TCPA prohibits making telemarketing solicitations to individuals who have registered their telephone numbers on the National Do-Not-Call Registry.

9. Accordingly, Plaintiff Christopher Laccinole ("Plaintiff" or "Mr. Laccinole") brings this action on behalf of himself and classes of similarly situated individuals.

**Jurisdiction and Venue**

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

11. This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a), because they are so closely related to the federal claims that they form a single case or controversy.

12. This Court has jurisdiction over SHL because SHL is headquartered in this District, conducts business transactions in this District and made telephone solicitations from this District as part of the business it conducts in this District.

13. Venue is proper in this District because a substantial part of the events or omissions giving rise to Mr. Laccinole's claims occurred in this District.

## Parties

14. Plaintiff Christopher Laccinole is a natural person who at all relevant times resided in Willis, Texas.

15. Mr. Laccinole is, and at all relevant times was, a "person" as defined by 47 U.S.C. § 153(39).

16. SHL is a corporation organized and existing under the laws of the State of Michigan, with headquarters located at 805 E. Maple Road, Birmingham, MI 48009.

17. SHL is, and at all relevant times was, a "person" as defined by 47 U.S.C. § 153(39).

## TCPA Background

18. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

19. Relevant here, the TCPA establishes a national "do not call" database

of numbers not to be called. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

20. These regulations are codified at 47 C.F.R. §§ 64.1200(c).

21. Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

22. A violation of 47 C.F.R. § 64.1200(c) carries statutory damages of $500 to $1,500 per call through § 227(c) of the TCPA.

23. The TCPA also specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

24. The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.*

25. These regulations are codified at 47 C.F.R. § 64.1200(d)(1)-(6).

26. These regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. § 64.1200(d) (1, 2, 3, 6).

27. These regulations also require persons or entities making telemarketing calls to accurately provide "the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." 47 C.F.R. § 64.1200(d)(4).

28. These policies and procedures prohibit a company from making calls for telemarketing purposes[1] unless they have implemented these policies and procedures. 47 C.F.R. § 64.1200(d).

29. Accordingly, all telemarketing calls violate the TCPA, unless

[1] The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR 64.1200(f)(15), which can be established by a "voluntary two-way communication". 47 CFR 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR 64.1200(f)(13). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

Defendant can demonstrate that it has implemented the required policies and procedures.

30. There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c):

> Section 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013)

31. These requirements are separate but cumulative. In other words, a company must comply with both the 64.1200(d) regulations *and* the procedures for complying with the national "do not call" database regulations. A failure to comply with either is a distinct violation of 47 U.S.C. § 227(c).

32. Further, a person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls. *See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations"). In fact, in May 2013, the FCC issued a binding declaratory ruling

clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶28 (2013).

33. Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories including vicarious liability. Under those circumstances, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

**Texas Business & Commerce Code Background**

34. Section 302.101 of the Texas Business & Commerce Code prohibits sellers from engaging in telephone solicitation from a location in Texas or to a purchaser located in Texas unless the seller obtains a registration certificate from the Office of the Secretary of State for the business location from which the solicitation is made.

35. Sellers engaging in telephone solicitations are required to register, and among other things, list "each telephone number to be used by the seller and the address where each telephone using the number is located." § 302.151(10).

36. Section 302.302(a) of the Texas Business & Commerce Code provides

that a person who violates this chapter is subject to a civil penalty of no more than $5,000 for each violation. Furthermore, section 302.302(d) provides that the party bringing the action is also entitled to recover all reasonable cost of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorneys' fees.

37. Pursuant to section 301.051(b) of the Texas Business & Commerce Code, a telephone solicitor may not make a consumer telephone call to a consumer unless: (1) the telephone solicitor, immediately after making contact with the consumer to whom the call is made, identifies: (A) himself of herself by name; (B) the business n whose behalf the telephone solicitor is calling; and (C) the purpose of the call.

38. Pursuant to section 305.053(a) of the Texas Business & Commerce Code, a person who receives a communication that violates 47 U.S.C. § 227, a regulation adopted under that provision, or Subchapter A of the TBCC may bring an action against the person who originates the communication for an injunction, damages or both.

**Factual Allegations**

39. Mr. Laccinole is the user of a residential telephone number (401)-XXX-0762.

40. Mr. Laccinole's telephone number (401)-XXX-0762 is used for

residential purposes and is not associated with a business.

41. Mr. Laccinole's telephone number (401)-XXX-0762 has been on the National Do-Not-Call Registry since February 23, 2016.

42. Mr. Laccinole placed his telephone number (401)-XXX-0762 on the National Do-Not-Call Registry because he did not want unsolicited telemarketing calls, such as the ones at issue here.

43. On or about June 5, 2025, Mr. Laccinole began receiving telephone solicitations from SHL in the form of text messages and live calls. Each of the text messages and calls were received by Mr. Laccinole while he was in Texas.

44. On June 5, 2026 at 12:31pm, SHL sent Mr. Laccinole the following text message from telephone number (734) 519-7940.




45. The text message did not identify SHL or provide any contact information for SHL.

46. Rather, the message stated it was from Brent with the "VA/FHA Loan

Tracking Team."

47. Upon information and belief, the message was sent by SHL on behalf of or at the direction of UWM, SHL's partner to market UWM's mortgage products.

48. Mr. Laccinole did not request any information from SHL or UWM.

49. Mr. Laccinole did not have any relationship with SHL or UWM at the time of the message.

50. On June 5, 2025 at 3:21pm, Mr. Laccinole received a call from SHL from telephone number (401) 313-4583.

51. Upon information and belief, the number was spoofed to make it appear as if it was a local call to increase the likelihood that Mr. Laccinole would answer the call.[2]

52. During the call, SHL attempted to solicit Mr. Laccinole with mortgage products from UWM.

53. During the call, SHL would not properly identify itself as the calling entity.

54. During the call, Mr. Laccinole advised he was not interested.

55. Following the call, on June 5, 2025 at 3:24pm, SHL sent Mr. Laccinole another text messages as follows:

---

[2] Spoofing telephone numbers is illegal. *See* 47 U.S.C. § 227(e).




56. The message from SHL recognizes that the called parties are likely to think the messages are spam, which they are.

57. The message also recognized that Mr. Laccinole was not interested in SHL's products or services.

58. Mr. Laccinole did not respond.

59. On August 2, 2025 at 9:23am, SHL sent Mr. Laccinole another text message soliciting its mortgage products from telephone number (734) 519-7940.




60. SHL continued to send Mr. Laccinole text messages from telephone number (734) 519-7940 as follows:






















61. None of the messages properly identified SHL as the sender of the messages.

62. On November 17, 2025, SHL began texting Mr. Laccinole from another telephone number (628) 200-4240:




63. SHL sent Mr. Laccinole additional text messages from number (628) 200-4240 on December 1, 2025 and December 11, 2025 as follows:




64. These messages again did not identify SHL as the sender of the messages.

65. On February 11, 2025 at 8:19am, SHL called Mr. Laccinole from telephone number (936) 213-0472.

66. Mr. Laccinole spoke with Paul Zakar.

67. Mr. Laccinole asked Mr. Zakar what company he was calling from.

68. Mr. Zakar was evasive and would not identify SHL as the caller.

69. Mr. Laccinole advised he was in a meeting and asked Mr. Zakar to send him an email, so that Mr. Laccinole could identify the company that was calling and texting him.

70. On February 11, 2025 at 8:25am, Mr. Laccinole received an email from paul.z@swifthomeloans.com.

71. The body of the email identified Swift Home Loans Partnered with "UWM | United Wholesale Mortgage."

72. On February 16, 2026 at 9:13am, SHL sent Mr. Laccinole another text message from telephone number (248) 602-2660 soliciting its loan products:




73. On February 16, 2026 at 2:18pm, SHL called Mr. Laccinole from telephone number (401) 227-3028.

74. Mr. Laccinole did not answer the call.

75. On February 16, 2026 at 3:56pm, SHL called Mr. Laccinole.

76. Mr. Laccinole answered the call and the caller attempted to solicit Mr. Laccinole with mortgage products.

77. Mr. Laccinole advised the caller that he was not interested and not to contact him again.

78. Despite instructing SHL not to contact him again, SHL continued to call Mr. Laccinole from various telephone numbers as follows:

- February 16, 2026 at 4:11pm from (401) 227-3028;
- February 17, 2026 at 2:26PM from (401) 227-3028;
- February 17, 2026 at 2:36pm from (401) 227-3028;
- February 18, 2026 at 2:22pm from (401) 227-3028;
- February 18, 2026 at 3:06pm from (401) 227-3028;
- February 18, 2026 at 3:21pm from (401) 227-3028;
- February 20, 2026 at 2:49pm from (401) 227-3028;
- February 21, 2026 at 2:21pm from (401) 227-3028;
- February 21, 2026 at 3:06pm from (401) 227-3028;
- February 23, 2026 at 2:21pm from (401) 227-3028;
- February 23, 2026 at 2:36pm from (401) 227-3028;
- March 2, 2026 at 2:56pm from (401) 227-3028;
- March 2, 2026 at 3:01pm from (401) 227-3028;
- April 15, 2026 at 10:27am from (401) 771-1635;
- June 23, 2026 at 2:22pm from (872) 274-4701;
- July 17, 2026 at 2:17pm from (401) 216-7241;
- July 20, 2026 at 8:25am from (401) 312-4621;
- July 21, 2026 at 2:40pm from (248) 731-5206;

- July 22, 2026 at 9:51am from (401) 227-4155;
- July 23, 2026 at 9:47am from (401) 216-7243;
- July 24, 2026 at 9:41am from (651) 370-8395;
- July 30, 2026 at 1:00pm from (401) 216-7241; and
- August 4, 2026 at 3:22pm from (401) 216-7243.

79. When Mr. Laccinole would answer SHL's calls, SHL's representatives would be evasive when asked what company they were calling from.

80. When asked directly, SHL's representatives would respond that they are a partner of UWM, but would not identify that they were calling from SHL.

81. Upon information and belief, SHL trained its representatives to be evasive because SHL knew it was violating the TCPA and various state laws and did not want to reveal its identity to minimize complaints and litigation.

82. Despite instructing SHL not to contact him again, SHL continued to send Mr. Laccinole text messages as follows:

Monday, Feb 23 • 9:15 AM

Hi Chris - I don't want you overpaying on a VA loan if you don't have to.
We've already corrected several loans from that same window that had unnecessary cost baked in.
With the equity at 12497 Point Aquarius Blvd, this could be meaningful.
If there's even a chance you're leaving money on the table, it's worth 5 minutes - when can you chat?

- Alex from UWM Partner

Reply STOP to unsubscribe

9:15 AM

Monday, Mar 2 • 9:32 AM

Good morning Chris,
The 10year rate is finally at 3.9 and rates are coming down hard to accomodate it. We just rolled out our new refi shield program as well to save Americans money on their monthly payment. When's a good time for you to chat? I want to lock this in fast so we can take advantage of the downward trend of rates.

- Alex from UWM Partner

Reply STOP to unsubscribe

Monday, Apr 6 • 8:13 AM

Texting with UWM (SMS/MMS)

We are talking to a lot of vets in the high 5's, 6s or higher now.

Has anyone shown you how your veteran benefits could make things easier on your mortgage?

Hi Christopher, Michael here, VA Specialist. I had a quick question about your property when you have a moment.

Reply STOP to opt out

Monday, Apr 6 • 10:32 AM

Only takes 2 mins to check it out. I'll tell you straight up if it's worth it or not.

Do you know your current interest rate?

10:32 AM

Tuesday, Apr 7 • 11:24 AM

Can I steal 60 seconds to explain why this is relevant to you, Christopher?

Tuesday, Apr 7 • 11:24 AM

Can I steal 60 seconds to explain why this is relevant to you, Christopher?

Wednesday, Apr 8 • 9:54 AM

Hey Christopher,

Not sure if you saw my last message?

9:54 AM

Christopher, with hikes now on the agenda, most vets are checking to make sure they are in the best spot. Are you above 6 with you current %?

Stop to opt Out



















83. As shown above, SHL refused to identify itself when asked by Mr. Laccinole in the text messages.

84. Mr. Laccinole did not provide prior express invitation or permission or consent to SHL or UWM for any of SHL's telephone calls or text messages.

85. SHL did not have the required policies or procedures at the time of the

calls it made to Mr. Laccinole and the classes defined below.

86. Alternatively, whatever written policies existed either failed to comply with the minimum requirements under the TCPA, 47 C.F.R. § 64.1200(d), or were never properly implemented—including as evidenced by the use of false and deceptive identification during the telephone calls and text messages to Mr. Laccinole.

87. SHL's violations were negligent.

88. Alternatively, SHL's violations were willful and knowing.

89. For example, SHL has received numerous complaints from consumers via the Better Business Bureau related to SHL's illegal telemarketing campaigns:

**Initial Complaint**

**Date:** 05/30/2026

This company contacted me despite my number being listed on the National Do Not Call Registry. Based on my experience, they demonstrated a troubling disregard for federal telemarketing laws and consumer privacy rights. I would strongly caution anyone considering doing business with a company that appears willing to ignore legal requirements designed to protect consumers from unwanted calls and texts.

**Initial Complaint**

**Date:** 07/30/2024

Receiving calls and texts despite being on the do-not-call registry

**Initial Complaint** **Type:** Service or Repair Issues

**Date:** 06/25/2024 **Status:** Answered

Somehow Swift Home Loans got my contact information a few months back, requesting I consider taking an IRRL with them. Multiple times during phone calls and texts, they've ask me to consider, which the conversation concludes with me not wanting any business from them. It's getting to a point where they're calling daily to a point where it could be considered harassment. If this is how Swift Home Loans conducts prospecting potential clients, they need to fire their business operations director. It's inappropriate to continually call and text people that DO NOT WANT TO ENGAGE IN BUSINESS WITH YOUR COMPANY! No means no, and that's has to be it. If you can't take a hint, then take this complaint as a constant reminder that you cannot repeatedly texting and calling someone from different phone numbers asking if they've changed their minds. It's unethical and morally incorrect for a business to continue these sales practices. Even if I would get a lower rate from Swift Homem Loans, I still wouldn't enter into any agreement with them, because their operations do not consider other people's standings and decisions. If they're not considerate of my decisions, then they'll won't be considerate in contracts. No means no, Swift Home Loans.

90. Mr. Laccinole and the classes were damaged by the violations alleged herein. Their privacy was improperly invaded, SHL's calls temporarily seized and trespassed upon the use of their phones, and/or they were forced to divert attention away from other activities to address the unwanted telephone calls. SHL's telephone calls and text messages were annoying and a nuisance, and wasted the time of Mr. Laccinole and the class members. *See, e.g., Mims,* 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

## <u>DEFENDANT'S LIABILITY</u>

91. Because SHL's calls constitute "solicitations" and "telemarketing" as defined by the regulations to the TCPA, SHL was required to obtain prior express written consent from the persons to whom SHL made calls.

92. "Prior express written consent" is specifically defined by statute as:

> [A]n agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or

> cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

47 C.F.R. §64.1200(f)(8)

93. Mr. Laccinole never provided SHL with any consent written or otherwise.

94. SHL was engaged in a cold calling / cold texting marketing campaign without any consent.

95. SHL used automated systems to make unsolicited outbound telephonic sales calls to hundreds if not thousands of consumers across the U.S., including to consumers whose phone numbers are listed on the National Do-Not Call Registry.

96. All of the calls alleged herein were made to Plaintiff and Class members for the purpose of selling SHL's partners mortgage products and services to them.

97. SHL made two or more telephone solicitations to Mr. Laccinole, whose number was on the National Do-Not-Call Registry at the time of the telephone calls. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c).

98. Accordingly, for violations of 47 C.F.R. § 64.1200(c), Mr. Laccinole is entitled to $500 per call through 47 U.S.C. § 227(c).

99. Mr. Laccinole is entitled to $1,500 per call if the actions are found to be knowing or willful.

100. SHL placed two or more telemarketing calls to Mr. Laccinole, despite not having in place the required policies and procedures prior to making such calls. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.6200(d).

101. SHL's lack of policies and procedures is evidenced by its use of its faulty identification practices.

102. SHL's lack of policies and procedures is evidenced by its failure to honor Mr. Laccinole's internal do-not-call request.

103. Accordingly, for violations of 47 C.F.R. § 64.1200(d), Mr. Laccinole is entitled to $500 per call through 47 U.S.C. § 227(c).

104. Mr. Laccinole is entitled to $1,500 per call if the actions are found to be knowing or willful.

105. For the same reasons set forth above, SHL violated Texas Business and Commerce Code § 305.053.

106. Accordingly, for violations of §305.053, Mr. Laccinole is entitled to $500 per call or text message.

107. Mr. Laccinole is entitled to $1,500 per call if the actions are found to be knowing or willful.

108. Finally, SHL did not have the required registration under Texas Business and Commerce Code §302.101.

109. Accordingly, for violations of §302.101, Mr. Laccinole is entitled to

$5000 per violation.

## CLASS ACTION ALLEGATIONS

110. Mr. Laccinole brings this action under Fed. R. Civ. P. 23 on behalf of four proposed "Classes," as defined as follows:

## THE CLASSES

> Plaintiff and all persons within the United States to whose telephone number SHL placed two or more telemarketing calls and/or text messages in a 12-month period when the telephone number to which the telephone calls and/or text messages were made was on the National Do-Not-Call Registry for more than 30 days at the time of the calls and/or text messages, and where the purpose of the telemarketing calls and/or text messages was to solicit mortgage products or services, from four (4) years prior to the filing of the Complaint.

("Registry Class")

> Plaintiff and all persons within the United States whose telephone number SHL placed two or more telemarketing calls and/or text messages in a 12-month period from four (4) years prior to the filing of the Complaint that did not disclose SHL was the caller and/or were made after SHL's records reflect the called party instructed SHL to stop calling

("Policy Class").

> Since four years preceding the filing of this Complaint, Plaintiff and all persons in the state of Texas to whom after four years preceding the filing of this Complaint SHL made two or more telemarketing calls in a 12-month period in violation of 47 U.S.C. § 227 or a regulation adopted under that provision.

(Texas Class)

> Since four years preceding the filing of this Complaint, Plaintiff and all residents of the State of Texas to whose telephone number SHL placed a telephone solicitation when Defendant did not hold a registration certificate as required by Tex. Bus. & Com. Code § 302.101.

(Texas Registration Class)

(The Registry Class, the Policy Class, the Texas Class and the Texas Registration Class are collectively referred to herein as the "Classes.")

111. Excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

112. The Members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

113. The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendant and third parties maintain written and electronically stored data showing:

- The time period(s) during which Defendant made the telephone solicitations;
- The telephone numbers to which Defendant made telephone solicitations;

- The telephone numbers for which Defendant had prior express written consent;
- The purposes of such telephone calls;
- The telephone numbers for which Defendant was instructed not to call; and
- The names and addresses of Class members.

114. The Classes are comprised of hundreds, if not thousands, of individuals.

115. There are common questions of law and fact affecting the rights of the Members of the Classes, including, *inter alia*, the following:

- Whether Defendant makes telemarketing calls;
- Whether Defendant obtains prior express written consent;
- Whether Defendant makes solicitation calls and to telephone numbers registered on the National Do-Not-Call Registry;
- Whether Defendant had the required policies and procedures prior to making telemarketing calls;
- Whether Defendant's statutory violations were willful and knowing;
- Whether Defendant had the appropriate telemarketing registration certificate; and
- Whether Defendant should be enjoined from engaging in such conduct in the future.

116. Plaintiff is a member of the Classes in that Defendant placed two or more calls and/or text messages for telemarketing purposes, in a one-year period to his telephone number, without his prior express written consent, and while his telephone number was on the National Do-Not-Call Registry.

117. Plaintiff's claims are typical of the claims of the Members of the Classes in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

118. Plaintiff and all putative Members of the Classes have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Classes spent time tending to Defendant's unwanted calls and text messages and suffered a nuisance and an invasion of their privacy.

119. Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

120. Plaintiff will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent him and the Classes.

121. Defendant has acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

122. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

123. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

124. Common questions will predominate, and there will be no unusual manageability issues.

**FIRST CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On Behalf of Plaintiff and the Registry Class)**

125. Plaintiff and the proposed Registry Class incorporate the allegations of paragraphs 1-124 as if fully set forth herein.

126. Defendant made telephone solicitations to Plaintiff's and putative Registry Class Members' telephone numbers.

127. Plaintiff's and putative Registry Class Members' telephone numbers were all on the National Do-Not-Call Registry at the time of the calls.

128. Plaintiff and putative Registry Class Members each received two or more such calls and/or text messages in a 12-month period.

129. Plaintiff and putative Registry Class Members are entitled to an award of $500 in statutory damages for each telephone solicitation call pursuant to 47 U.S.C. § 227(c)(5).

130. Plaintiff and putative Registry Class Members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call or text message made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

**SECOND CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On behalf of Plaintiff and the Policy Class)**

131. Plaintiff and the proposed Policy Class incorporate the allegations of paragraphs 1-124 as if fully set forth herein.

132. Defendant made numerous telephone calls and sent numerous text messages for telemarketing purposes to Plaintiff's and putative Policy Class Members' telephone numbers.

133. Defendant did so despite not having a written policy as required by the TCPA.

134. Defendant misrepresented its identity to conceal the illegal conduct.

135. Defendant did so despite not training their personnel on the TCPA's identification requirements.

136. Defendant also failed to honor do-not-call requests.

137. Defendant made two or more telemarketing calls and/or text messages to Plaintiff and putative Policy Class Members' telephone numbers in a 12-month period.

138. Plaintiff and putative Policy Class Members are entitled to an award of $500 in statutory damages telephone call pursuant to 47 U.S.C. § 227(c)(5).

139. Plaintiff and putative Policy Class Members are entitled to an award of treble damages in an amount up to $1,500 telephone call, pursuant to 47 U.S.C. § 227(c)(5).

**THIRD CAUSE OF ACTION**
**Violations of Texas Business and Commerce Code, Chapter 305**
**(On Behalf of Plaintiff and the Texas Class)**

206. Plaintiff and the proposed Texas Class incorporate the allegations of paragraphs 1-124 as if fully set forth herein.

207. Plaintiff is a "person" as defined by Texas Business & Commerce Code § 1-201(b)(27).

208. Defendant is a "person" as defined by Texas Business & Commerce Code § 1-201(b)(27).

209. Pursuant to Section 305-053(a) of the Texas Business & Commerce Code, a person who receives a communication that violates 47 U.S.C. § 227, or a regulation adopted under that provision, may bring an action against the person who originates the communication for an injunction, damages or both an injunction and damages.

210. As set forth above Defendant violated 47 U.S.C. § 227, or a regulation adopted under that provision.

211. Plaintiff is entitled to a permanent injunction to prevent any further violations of the Texas Business & Commerce Code, Chapter 305.

212. Pursuant to Section 305.053(b) of the Texas Business & Commerce Code, Plaintiff is entitled to $500.00 for each violation for each call or text message negligently made by Defendant.

213. Pursuant to Section 305.053(c) of the Texas Business & Commerce Code, Plaintiff is entitled to not more than the greater of $1,500.00 for each violation for each violation by Defendant that the Court finds was made knowingly or intentionally.

**FOURTH CAUSE OF ACTION**
**Violations of Texas Business and Commerce Code, § 302.101**
**(On Behalf of Plaintiff and the Texas Registration Class)**

214. Plaintiff and the proposed Texas Registration Class incorporate the allegations of paragraphs 1-124 as if fully set forth herein.

215. Plaintiff is a "consumer" as defined by § 301.001(2) of the Texas Business & Commerce Code.

216. Defendant is a "telephone solicitor" as defined by § 301.001(5)) of the Texas Business & Commerce Code.

217. Defendant attempted to sell mortgage products and services to consumers.

218. No exemptions to the registration requirements apply.

219. §302.101 of the Texas Business & Commerce Code prohibits sellers from engaging in telephone solicitation from a location in Texas or to a purchaser located in Texas unless the seller obtains a registration certificate from the Office of the Secretary of State for the business location from which the solicitation is made.

220. Defendant knew Plaintiff was located in Texas because it accessed information about his mortgage related to a property located in Texas.

221. Sellers engaging in telephone solicitations are required to register, among other things, list "each telephone number to be used by the seller and the address where each telephone using the number is located." §302.151(10).

222. Defendant failed to register pursuant to § 302.101 of the Texas Business & Commercial Code to provide telephone solicitations.

223. Defendant placed telephone solicitations to Plaintiff's and the Texas Registration Class Members' telephone numbers while Defendant did not hold a registration certificate.

224. Defendant's telephone solicitations were made to Plaintiff and the Texas Registration Class Members located in Texas.

225. Plaintiff and the Texas Registration Class Members are entitled to an award of up to $5,000 for each violation and all reasonable cost of prosecuting the

action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. An order certifying the Classes as defined above, appointing Plaintiff as the representatives of the Classes and appointing his counsel as Class Counsel;

B. An order declaring that Defendant's actions, as set out above, violate the statutes referenced herein;

C. An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D. An award of statutory damages;

E. An award of treble damages;

F. An award of reasonable attorneys' fees and costs, including the costs set forth pursuant to Tex. Bus. & Com. Code § 302.302(d); and

G. Such other and further relief that the Court deems reasonable and just.

## Demand for Jury Trial

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Dated: August 11, 2026.

By: *\/s/ Max S. Morgan*
Max S. Morgan

The Weitz Firm, LLC
1515 Market Street #1100
Philadelphia, PA 19102
(267) 587-6240
max.morgan@theweitzfirm.com

George T. Blackmore (#76942)
Blackmore Law PLC
31800 Northwestern Hwy
Suite 350
Farmington Hills, MI 48334
(888) 835-2993
george@blackmore.law

*Counsel for Plaintiff and the proposed classes*