UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER LACCINOLE, on behalf of himself and others similarly situated,

Plaintiff,

Case No. 2:26-cv-12813-MFL-CI

v.

SWIFT HOME LOANS, INC.,

Defendant.

---

**DEFENDANT SWIFT HOME LOANS, INC.'S MOTION TO DISMISS COMPLAINT**

Defendant Swift Home Loans, Inc. ("SHL") respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff's Complaint with prejudice.

Plaintiff's Complaint fails to state a claim for several reasons. ***First***, as a threshold matter, Plaintiff does not plausibly allege that SHL initiated the communications at issue. Plaintiff connects only a single call to SHL with any facts, and he offers no explanation for why he attributes the remaining calls and texts—from more than a dozen different numbers and callers, many of whom allegedly declined to identify themselves—to SHL.

***Second***, Plaintiff's Telephone Consumer Protection Act ("TCPA") claims under Counts I and II are largely predicated on text messages, which are not

actionable "telephone calls" under Section 227(c)(5)'s plain language. ***Third***, Plaintiff's conclusory allegation that his cell phone is a "residential telephone" is insufficient to state a claim because the TCPA's Do-Not-Call provisions apply only to "residential telephone subscribers." Plaintiff's phone number has an out-of-state area code and thus was used to place calls in an area other than where the phone number originated—suggesting that it was a cell phone. Cell phones do not qualify as residential telephones under the statute's plain text. ***Fourth***, Count III under Texas Business & Commerce Code § 305.053 is entirely derivative of the federal TCPA claims and therefore rises and falls with Counts I and II. And ***fifth***, Count IV under Texas Business & Commerce Code § 302.101 fails because § 302.101 creates no freestanding private right of action. Instead, plaintiffs may only invoke § 302.101 by suing under the Texas Deceptive Trade Practices Act ("DTPA"). Plaintiff cannot invoke the DTPA because: (a) he cannot establish consumer standing—which requires that the plaintiff "has sought or acquired goods or services by purchase or lease" and that those goods or services "form the basis of the plaintiff's complaint"; and (b) he has not established a cognizable injury in the form of economic damages or mental anguish; he seeks only a per-call statutory sum.

For the reasons set forth more fully in SHL's accompanying Brief in Support, SHL respectfully requests that the Court grant this Motion.

On October 7, 2026, SHL sought Plaintiff's concurrence in this relief by

telephone call, but concurrence was denied.

WHEREFORE, SHL requests this Honorable Court issue an Order:

A. Dismissing the Complaint in its entirety with prejudice;

B. Awarding attorneys' fees, costs, and all other relief to which SHL is entitled.

Dated: October 22, 2026

Respectfully submitted,

FOLEY & LARDNER LLP

By: */s/ Irina Kashcheyeva*
Irina Kashcheyeva (P72575)
Raymond J. McVeigh (P84799)
500 Woodward Avenue, Suite 2700
Detroit, Michigan 48226
(313) 234-7100
(313) 234-2800
ikashcheyeva@foley.com
rmcveigh@foley.com
*Counsel for Defendant Swift Home Loans, Inc.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER LACCINOLE, on
behalf of himself and others similarly situated,

Plaintiff, Case No. 2:26-cv-12813-MFL-CI

v.

SWIFT HOME LOANS, INC.,

Defendant.

---

**BRIEF IN SUPPORT OF DEFENDANT SWIFT HOME LOANS, INC.'S MOTION TO DISMISS COMPLAINT**

# TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED........................................................ vii

I. INTRODUCTION ........................................................................................1

II. FACTUAL BACKGROUND.........................................................................4

A. Allegations About SHL And Communications With Plaintiff. ............4

B. Plaintiff's Claims And Class Allegations. ...........................................7

III. STANDARD OF REVIEW..........................................................................8

IV. THE COMPLAINT FAILS TO STATE A CLAIM. ......................................8

A. Plaintiff Fails to Plausibly Allege That SHL Is Responsible for the Calls and Text Messages at Issue. ..................................................8

B. Text Messages Are Not Actionable Under the DNC Provisions. .......12

C. Plaintiff Fails to State a Claim Under the DNC Provisions Because His Cell Phone Is Not a "Residential Telephone." ...............17

D. Count III Under Texas Business & Commerce Code § 305.053 Fails Because It Is Entirely Derivative of the TCPA Claims.............20

E. Count IV Fails Because § 302.101 Creates No Freestanding Private Right of Action and Plaintiff Has Not Satisfied the DTPA Requirements That Govern Any Private Claim.......................23

V. CONCLUSION..........................................................................................25

# TABLE OF AUTHORITIES

Page(s)

Cases

*Adamchik v. Credit Control Servs., Inc.*,
832 F. Supp. 2d 744 (W.D. Tex. 2011) ....................13

*Ankrah v. Streamline Funding, LLC*,
No. 1:26-CV-00784-JPB, 2026 WL 3027138 (N.D. Ga. Sept. 29, 2026) ...........15

*Anthony v. Brian Mktg. Grp.*,
No. 24-80800-CIV, 2026 WL 2685650 (S.D. Fla. Sept. 11, 2026) .... 3, 15, 18, 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................... 1, 8, 9, 20

*Bank v. Spark Energy, LLC*,
860 F. App’x 205 (2d Cir. 2021) ....................11

*Barr v. American Ass’n of Political Consultants*,
591 U.S. 610 (2020) ....................18

*Bostock v. Clayton County*,
590 U.S. 644 (2020) ....................13

*Bruce v. Adams & Reese, LLP*,
168 F.4th 367 (6th Cir. 2026) ....................16

*Busbee v. ServiceToday!*,
No. 4:24-CV-00364-P, 2024 WL 4428989 (N.D. Tex. Oct. 4, 2024) .................23

*Callier v. GreenSky, Inc.*,
No. EP-20-CV-00304-KC, 2021 WL 2688622 (W.D. Tex. May 10, 2021)........21

*Callier v. Nat’l United Grp., LLC*,
No. EP-21-CV-71-DB, 2022 WL 20046134 (W.D. Tex. Jan. 26, 2022).............22

*Card v. R.J. Reynolds Tobacco Holdings, Inc.*,
No. 1:26-CV-433, 2026 WL 2673068 (M.D.N.C. Sept. 3, 2026)........................15

*Cherkaoui v. Santander Consumer USA, Inc.*,
32 F. Supp. 3d 811 (S.D. Tex. 2014)....................3, 21

*Conrad v. Hart Consumer Products, Incorporated*,
No. 4:24-CV-307-CLM, 2026 WL 2741623 (N.D. Ala. Sept. 16, 2026)............15

*Cunningham v. Kondaur Cap.*,
No. 3:14-1574, 2014 WL 8335868 (M.D. Tenn. Nov. 19, 2014)...........................9

*Cunningham v. Sunshine Consulting Grp., LLC*,
2018 WL 3496538 (M.D. Tenn. July 20, 2018)....................17

*Cushman v. GC Servs., LP*,
657 F. Supp. 2d 834 (S.D. Tex. 2009).................... 24, 25

*D'Ambrosio v. Marino*,
747 F.3d 378 (6th Cir. 2014)....................8

*Davis v. CVS Pharmacy, Inc.*,
797 F. Supp. 3d 1270 (N.D. Fla. 2025).................... 14, 15

*Dawson v. Bank of Am., N.A.*,
605 F. App'x 263 (5th Cir. 2015)....................24

*Everett v. TK-Taito, L.L.C.*,
178 S.W.3d 844 (Tex. Ct. App. 2005)....................25

*Gaker v. Q3M Ins.*,
*Sols.*, 2023 WL 2472649 (W.D.N.C. Feb. 8, 2023)....................3

*Gavitt v. Born*,
835 F.3d 623 (6th Cir. 2016)....................8

*Hamdan v. Rumsfeld*,
548 U.S. 557 (2006)....................19

*Hicks v. Alarm.com Inc.*,
No. 20-cv-532, 2020 WL 9261758 (E.D. Va. Aug. 6, 2020)....................11

*Horton v. Nat'l Republican Senatorial Comm.*,
No. 3:22-CV-1000-G-BK, 2023 WL 372066 (N.D. Tex. Jan. 23, 2023) ............22

*Hunsinger v. Offer, LLC*,
No. 3:21-CV-2846-BH, 2022 WL 18143951 (N.D. Tex. Dec. 7, 2022) ............22

*In re Joint Petition Filed by DISH Network, LLC*,
28 FCC Rcd. 6574 (2013) ..........................................................................9, 11

*Iniguez v. CBE Grp.*,
969 F. Supp. 2d 1241 (E.D. Cal. 2013) ..........................................................19

*James v. Smarter Contact, Inc.*,
828 F. Supp. 3d 1367 (M.D. Fla. Mar. 31, 2026)...............................................15

*Jones v. Blackstone Med. Servs., LLC*,
792 F. Supp. 3d 894 (C.D. Ill. 2025)............................................................ 12, 15

*Jones v. Star Houston, Inc.*,
45 S.W.3d 350 (Tex. Ct. App. 2001) ..............................................................24

*Kapp v. E. Wisc. Water Conditioning Co.*,
2021 WL 778168 (E.D. Wisc. Mar. 1, 2021).....................................................19

*Koeller v. Ox AppSec Sec., Inc.*,
No. 4:25-CV-0641-MTS, 2026 WL 2935851 (E.D. Mo. Sept. 30, 2026) ...............
........................................................................................................ 3, 18, 19, 20

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024) ..........................................................................................2

*McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*,
606 U.S. 146 (2025) ......................................................................................2, 13

*McLeod v. Gyr*,
439 S.W.3d 639 (Tex. Ct. App. 2014) ...............................................................24

*Mims v. Arrow Fin. Servs., LLC*,
565 U.S. 368 (2012) .........................................................................................18

*Moore v. Triumph CSR Acquisition, LLC*,
2023 WL 8601528 (N.D. Ill. Dec. 12, 2023) ....................................................18

*Morgan v. U.S. Xpress, Inc.*,
2018 WL 3580775 (W.D. Va. July 25, 2018) ....................................................18

*Phillips v. GJD Stars Inc.*,
No. 26-61910, 2026 WL 3060556 (S.D. Fla. Sept. 18, 2026) .............................15

*Pulsifer v. United States*,
601 U.S. 124 (2004) ..........................................................................................16

*Radavansky v. 1st Class Medical*,
No. 25-CV-03796-PAB-STV, 2026 WL 2858562 (D. Colo. Sep. 23, 2026)......15

*Radvansky v. 1-800-Flowers.com, Inc.*,
2026 WL 456919 (N.D. Ga. Feb. 17, 2026)................................................ 15, 16

*Richards v. Fashion Nova, LLC*,
2026 WL 847568 (S.D. Ind. Mar. 26, 2026) ............................................... 14, 15

*Steidinger v. Blackstone Med. Servs.*,
--- F.4th ----, 2026 WL 2028517 (7th Cir. July 14, 2026) ................. 2, 13, 14, 15

*Stockdale v. Skymount Prop. Grp., LLC*,
825 F. Supp. 3d 622 (N.D. Ohio 2026) ...................................................... 15, 16

*Sw. Airlines Co. v. Saxon*,
596 U.S. 450 (2022) ..........................................................................................14

*Thomas v. Elite Legal Practice PC*,
No. CV 25-10854-MWF, 2026 WL 1048217 (C.D. Cal. Mar. 23, 2026) ...........22

*Trim v. Reward Zone USA LLC*,
76 F.4th 1157 (9th Cir. 2023)............................................................................16

Statutes

47 U.S.C. § 227 ........................................................................................... 14, 21
47 U.S.C. § 227(a)(4)..........................................................................................14

47 U.S.C. § 227(b)(1) .......... 12
47 U.S.C. § 227(b)(1)(A) .......... 22
47 U.S.C. § 227(b)(1)(B) .......... 18, 19
47 U.S.C. §§ 227(b)(1)(A)(iii), (b)(2)(C), (b)(2)(H) .......... 19
47 U.S.C. § 227(c) .......... 18, 19, 20
47 U.S.C. § 227(c)(1) .......... 2, 17, 19
47 U.S.C. §§ 227(c)(1) through (c)(4) .......... 14
47 U.S.C. § 227(c)(5) .......... passim
47 U.S.C. § 227(e) .......... 16
47 U.S.C. §§ 227(e)(8)(C) .......... 16
Tex. Bus. & Com. Code Ann. § 17.50(a)(1) .......... 25
Tex. Bus. & Com. Code Ann. § 17.50(h) .......... 24
Tex. Bus. & Com. Code Ann. § 302.101 .......... passim
Tex. Bus. & Com. Code Ann. § 302.101(a) .......... 23
Tex. Bus. & Com. Code Ann. § 302.302(a) .......... 23
Tex. Bus. & Com. Code Ann. § 305.053 .......... passim
Tex. Bus. & Com. Code Ann. § 305.053(a) .......... 9, 22

Rules

Fed. R. Evid. 201(b)(2) .......... 11
Fed. R. Evid. 201(c)(2) .......... 11
Federal Rule of Civil Procedure 12(b)(6) .......... 1

Regulations

47 C.F.R. § 64.1200(c) .......... 7, 12
47 C.F.R. § 64.1200(d) .......... 7, 12
47 C.F.R. § 64.1200(e) .......... 12

# STATEMENT OF ISSUES PRESENTED

1. Whether the Court should dismiss Counts I through III because Plaintiff fails to plausibly allege that SHL is responsible for the calls and text messages at issue, where Plaintiff connects only a single call to SHL with any facts and pleads nothing tying SHL to the communications he received from more than a dozen other telephone numbers and unidentified callers, leaving at most one call—which is insufficient to satisfy § 227(c)(5)'s requirement of "more than one telephone call within any 12-month period by or on behalf of the same entity."

   Defendant's Answer: Yes.

2. Whether the Court should dismiss Counts I and II of Plaintiff's Complaint insofar as they are predicated on text messages, where Section 227(c)(5) of the TCPA, by its plain terms, applies only to "telephone calls," the FCC's prior guidance applying § 227(c)(5) to text messages is no longer entitled to *Chevron* deference, and the U.S. Court of Appeals for the Seventh Circuit and district courts in the Sixth Circuit and across the country have held that text messages are not "telephone calls" under § 227(c)(5) of the TCPA.

   Defendant's Answer: Yes.

3. Whether the Court should dismiss Counts I and II because the TCPA's Do-Not-Call provisions apply only to "residential telephone subscribers," 47 U.S.C. § 227(c)(1), and Plaintiff's conclusory allegation that his cell phone—which has an out-of-state area code—is a "residential telephone" is insufficient under *Iqbal* to state a claim, particularly where: (a) the statute draws a textual distinction between "residential telephone" and "cellular telephone service"; (b) the ordinary meaning of "residential telephone" in 1991 referred to a landline hardwired into a residence; and (c) prior decisions extending § 227(c) to cell phones relied on FCC guidance no longer entitled to deference after *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024).

   Defendant's Answer: Yes.

4. Whether the Court should dismiss Count III under Texas Business & Commerce Code § 305.053 because that statute is entirely derivative of the federal TCPA, permitting suit only where a communication "violates [47

U.S.C. § 227], a regulation adopted under that provision, or Subchapter A" of Chapter 305, Tex. Bus. & Com. Code Ann. § 305.053(a), such that any deficiency that defeats Counts I and II under the TCPA necessarily defeats Count III as well.

Defendant's Answer: Yes.

5. Whether the Court should dismiss Count IV under Texas Business & Commerce Code § 302.101 because § 302.101 creates no freestanding private right of action, and Plaintiff has not pleaded (and cannot plead) the DTPA consumer standing and has not alleged actual damages required to proceed under § 302.303.

Defendant's Answer: Yes.

# I. INTRODUCTION

Plaintiff Christopher Laccinole brings this putative class action under the Telephone Consumer Protection Act ("TCPA") and the Texas Business & Commerce Code § 305.053 ("Texas Mini-TCPA"), alleging that Swift Home Loans, Inc. ("SHL") violated the TCPA's Do-Not-Call ("DNC") provisions at 47 U.S.C. § 227(c)(5) and the Texas Mini-TCPA by placing unsolicited calls and text messages to his phone. Plaintiff's claims fail for multiple independent reasons, each of which warrants dismissal with prejudice.

***First***, as a threshold matter, Plaintiff fails to plausibly allege that SHL is responsible for nearly all of the communications at issue. Plaintiff attributes to SHL calls and texts from at least fourteen different telephone numbers and multiple different senders—"Brent with the VA/FHA Loan Tracking Team," unidentified callers, and callers who refused to identify the company they represented. (Compl. ¶¶ 43–83.) Yet the only communication Plaintiff connects to SHL with any facts is a single call from (936) 213-0472, after which the caller, Paul Zakar, sent Plaintiff an email from a Swift Home Loans address. (*Id.* ¶¶ 65–71.) Plaintiff does not allege that he ever again received a call or text from that number or from Mr. Zakar, and he pleads no facts explaining why he believes SHL made any of the other calls or sent any of the texts. Labeling every caller "SHL" is a legal conclusion, not a factual allegation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And a single call cannot

support a claim under 47 U.S.C. § 227(c)(5), which requires "more than one telephone call within any 12-month period by or on behalf of the same entity."

***Second***, the majority of Plaintiff's claims are predicated on text messages, but text messages are not actionable under § 227(c)(5) of the TCPA. That provision creates a private right of action only for persons who receive "more than one ***telephone call***" in violation of the DNC regulations. 47 U.S.C. § 227(c)(5) (emphasis added). Following the Supreme Court's decisions in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), and *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), courts are no longer bound by FCC guidance suggesting that "telephone call" encompasses text messages. Applying ordinary principles of statutory interpretation, the Seventh Circuit recently held that "§ 227(c)(5) does not permit plaintiffs to sue for the receipt of unwanted texts." *Steidinger v. Blackstone Med. Servs.*, --- F.4th ----, 2026 WL 2028517, at *1 (7th Cir. July 14, 2026). The majority of courts across the country—including within the Sixth Circuit—have reached the same conclusion. Plaintiff's text-message-based claims must be dismissed.

***Third***, even if Plaintiff could establish actionable telephone calls, his TCPA claims would fail because the DNC provisions apply only to "residential telephone subscribers," and Plaintiff's conclusory allegation that his phone is a "residential telephone" is insufficient under *Iqbal* to state a claim. 47 U.S.C. § 227(c)(1); Compl.

¶¶ 39–40. Although Plaintiff never expressly pleads that his number is a cell phone, his own allegations—that the number sends and receives text messages, that he answered a call on it while he was "in a meeting," and that it carries a Rhode Island area code even though he received every call and text while in Texas—make clear that it is a mobile device. (Compl. ¶¶ 43–44, 69, 83.) The statute draws a clear distinction between "residential telephone" and "cellular telephone service." Courts applying the statute's plain meaning—without the FCC guidance that *Loper Bright* and *McLaughlin* have rendered non-binding—have held that "a cellular phone and a residential phone are not the same thing," and that the TCPA's DNC provisions do not cover cell phones. *Gaker v. Q3M Ins. Sols.*, 2023 WL 2472649, at *3 (W.D.N.C. Feb. 8, 2023); *see also Koeller v. Ox AppSec Sec., Inc.*, No. 4:25-CV-0641-MTS, 2026 WL 2935851, at *1, *3 (E.D. Mo. Sept. 30, 2026); *Anthony*, 2026 WL 2685650, at *7–10. Because Plaintiff cannot plausibly allege communications on a residential telephone, he cannot state a claim.

***Fourth***, Count III under Texas Business & Commerce Code § 305.053 is entirely derivative of the federal TCPA claims. Section 305.053 permits suit only where a communication violates the TCPA or a regulation adopted under it. Texas courts have consistently held that § 305.053 claims "rise and fall" with the underlying federal claim. *Cherkaoui v. Santander Consumer USA, Inc.*, 32 F. Supp. 3d 811, 816 (S.D. Tex. 2014) (explaining that "if no violation of the TCPA exists,

there is no violation of the Texas TCPA”). Because every argument supporting dismissal of Counts I and II flows directly through to Count III, this claim should be dismissed. And even if Count III survived, Texas’s “one-satisfaction rule” would bar Plaintiff from recovering statutory damages under both the TCPA and § 305.053 for the same alleged violations.

***Fifth***, Count IV under Texas Business & Commerce Code § 302.101 fails because this section does not itself create a private right of action—the only private enforcement pathway runs through § 302.303, which permits an “injured” person to sue for actual damages in the manner provided under the Texas Deceptive Trade Practices Act (“DTPA”). But Plaintiff cannot establish DTPA consumer standing that is required in order to pursue a claim under the DTPA. And Plaintiff has not alleged a cognizable injury in the form of economic damages or mental anguish; he seeks only a per-call statutory sum. For these reasons, SHL respectfully requests that the Court dismiss the Complaint with prejudice.

## II. FACTUAL BACKGROUND[1]

### A. Allegations About SHL And Communications With Plaintiff.

SHL is a mortgage broker headquartered in Birmingham, Michigan that sometimes originates mortgages through United Wholesale Mortgage, LLC

[1] SHL accepts Plaintiff’s allegations as true solely for purposes of this Rule 12(b)(6) motion, except to the extent the allegations are conclusory and not supported by particular factual allegations.

("UWM"). (Compl. ¶¶ 2–3, 16.) The Complaint alleges that SHL solicits new customers to purchase mortgage products of its partners, such as UWM, via cold call marketing campaigns. (*Id.* ¶¶ 3, 5.) The Complaint further alleges that SHL "does not obtain consent for the solicitations it makes" and "purchases lead lists or other consumer data for [its] illegal cold calling campaigns." (*Id.* ¶ 5.)

According to the Complaint, Plaintiff Christopher Laccinole, a Texas resident, received calls and text messages from SHL to his phone, which has a Rhode Island area code (401) and has been registered on the National Do-Not-Call Registry since February 23, 2016. (Compl. ¶¶ 14, 39–42.) Plaintiff alleges that he placed his telephone number on the National DNC Registry "because he did not want unsolicited telemarketing calls, such as the ones at issue here." (*Id.* ¶ 42.) The Complaint describes the telephone number as a "residential telephone number" that "is used for residential purposes and is not associated with a business." (*Id.* ¶¶ 39–40.) Although Plaintiff's telephone number has a Rhode Island area code, he alleges he received the texts and the calls "while he was in Texas." (*Id.* ¶ 43.)

Despite the Complaint's characterization of Plaintiff's phone as "residential," its allegations indicate a cellular telephone: Plaintiff sent and received text messages at the number (*id.* ¶¶ 44, 55, 59–64, 72, 82–83), answered a call while "in a meeting" and asked the caller to email him instead (*id.* ¶ 69), and received every call and text "while he was in Texas" on a Rhode Island number (*id.* ¶¶ 14, 43)—all hallmarks of

a mobile phone, not a line hardwired into a Texas home.

The Complaint alleges that SHL began contacting Plaintiff on June 5, 2025, and continued through August 4, 2026. (*Id.* ¶¶ 43–78.) The alleged communications include numerous text messages and live calls from at least fourteen (14) different phone numbers (*id.*), many allegedly using spoofed caller IDs with Rhode Island area codes to appear as local calls. (*Id.* ¶ 51.) Plaintiff labels each of these senders and callers "SHL," but the Complaint ties only one communication to SHL with any facts: a call from (936) 213-0472 on February 11, 2025, in which the caller, Paul Zakar, was "evasive," after which Plaintiff received an email from paul.z@swifthomeloans.com identifying "Swift Home Loans Partnered with 'UWM | United Wholesale Mortgage.'" (*Id.* ¶¶ 65–71.) Plaintiff does not allege that he received any other call or text from (936) 213-0472 or from Mr. Zakar. The other texts are alleged to have come from "Brent with the VA/FHA Loan Tracking Team" or from various other numbers and did not identify SHL (*id.* ¶¶ 44–46, 59–64), and the other callers either would not identify their company or said only that they were a partner of UWM (*id.* ¶¶ 53, 79–80, 83).

Despite multiple messages inviting Plaintiff to reply STOP to unsubscribe (*id.* ¶¶ 72, 82), Plaintiff did not text STOP once. Rather, he alleges that he expressed he was "not interested" twice, both in live calls: (a) once during a live call on June 5, 2025, from telephone number (401) 313-4583, where a representative declined to

identify himself or the company he was working for (Compl. ¶¶ 50-54); and (b) once more during a live call on February 16, 2026, from an unidentified telephone number, where the unidentified caller "attempted to solicit Mr. Laccinole with mortgage products" and Plaintiff "advised the caller that he was not interested and not to contact him again." (Compl. ¶¶ 75-77.) Plaintiff does not allege that he received a phone call or text from either of these numbers again.

The Complaint further alleges that SHL did not have the required policies or procedures at the time of the calls, or alternatively that "whatever written policies existed either failed to comply with the minimum requirements under the TCPA . . . or were never properly implemented." (*Id.* ¶¶ 85–86.) Finally, Plaintiff alleges that SHL did not have the required registration under Texas Business & Commerce Code § 302.101. (*Id.* ¶ 108.)

**B. Plaintiff's Claims And Class Allegations.**

The Complaint asserts four claims: (1) a claim under the TCPA Do-Not-Call ("DNC") Registry regulations, 47 C.F.R. § 64.1200(c), based on alleged calls and texts to Plaintiff's number registered on the DNC Registry without consent (Count I); (2) a claim under the TCPA internal DNC regulations, 47 C.F.R. § 64.1200(d), based on alleged failure to honor opt-out requests, failure to properly identify the caller, and failure to maintain proper internal do-not-call procedures (Count II); (3) a claim under Texas Mini-TCPA § 305.053, which provides a private right of action

for communications that violate the TCPA (Count III); and (4) a claim under Texas Business & Commerce Code § 302.101, alleging that SHL made telephone solicitations to a Texas purchaser without holding a registration certificate from the Texas Secretary of State (Count IV). (Compl. ¶¶ 125–39, 206–25.) Plaintiff purports to bring this putative class action on behalf of two nationwide classes and two Texas-based classes.

## III. STANDARD OF REVIEW

A complaint must allege facts creating a "plausible inference" of legally cognizable harm. *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009). The Court "need not accept as true legal conclusions or unwarranted factual inferences" *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). Allegations "merely consistent with" liability "stop short of the line between possibility and plausibility." *Gavitt v. Born*, 835 F.3d 623 (6th Cir. 2016). A court should not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.

## IV. THE COMPLAINT FAILS TO STATE A CLAIM.

### A. Plaintiff Fails to Plausibly Allege That SHL Is Responsible for the Calls and Text Messages at Issue.

Each of Plaintiff's claims requires that SHL be responsible for the communications at issue. Section 227(c)(5) permits suit only by a person who has received "more than one telephone call within any 12-month period ***by or on behalf of*** the same entity" in violation of the DNC regulations, 47 U.S.C. § 227(c)(5)

(emphasis added), and § 305.053 permits suit only "against the person who ***originates*** the communication," Tex. Bus. & Com. Code Ann. § 305.053(a) (emphasis added). A plaintiff therefore must plead facts showing either that the defendant itself initiated the calls or that the defendant is vicariously liable under federal common-law agency principles for calls placed by a third party. *See In re Joint Petition Filed by DISH Network, LLC*, 28 FCC Rcd. 6574, 6584 ¶ 28 (2013); *Cunningham v. Kondaur Cap.*, No. 3:14-1574, 2014 WL 8335868 (M.D. Tenn. Nov. 19, 2014) (dismissing TCPA claims because plaintiff "fails to allege facts indicating that the [callers] were acting on behalf of [defendant] or that they were subject to its control"). Conclusorily attributing every call to the defendant is not enough, because courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

Plaintiff alleges calls and texts from at least fourteen different telephone numbers over fourteen months. (Compl. ¶¶ 43–83.) He ties exactly one of those calls to SHL with any facts. In particular, Plaintiff alleges that on February 11, 2025, he spoke with Paul Zakar, who called from (936) 213-0472; Plaintiff asked Mr. Zakar to email him, and he then received an email from paul.z@swifthomeloans.com identifying "Swift Home Loans." (*Id.* ¶¶ 65–71.) That is the beginning and the end of the facts linking SHL to at-issue calls. Plaintiff does not allege that he ever again received another call or text from (936) 213-0472, or that he ever heard from Mr.

Zakar again. (*See id.* ¶¶ 72–83.) Every other communication came from a different number and a different person: text messages from "Brent with the VA/FHA Loan Tracking Team" that "did not identify SHL" (*id.* ¶¶ 44–46, 59–61); texts from (628) 200-4240 that "did not identify SHL as the sender" (*id.* ¶¶ 62–64); a text from (248) 602-2660 (*id.* ¶ 72); a June 5, 2025 caller from (401) 313-4583 who "would not properly identify" the calling entity (*id.* ¶¶ 50–53); a February 16, 2026 caller from an unidentified number (*id.* ¶ 75); and callers from roughly a dozen other numbers who, when asked, "would not identify that they were calling from SHL" (*id.* ¶¶ 78–80). Plaintiff even alleges that the texts "refused to identify" the sender when he asked. (*Id.* ¶ 83.)

Why, then, does Plaintiff believe that SHL made these calls and sent these texts? The Complaint never explains. It does not allege that any of the other callers or texts named SHL, referenced Mr. Zakar, used the (936) 213-0472 number, provided a callback number, website, or email address associated with SHL, or followed the same script as the Zakar call. That some callers said they were a "partner of UWM" (*id.* ¶ 80) does not point to SHL, because Plaintiff does not, and cannot, allege that SHL is UWM's only partner or broker.[2] Plaintiff's key attribution

[2] Indeed, UWM is a large wholesale lender that has relationships with over 13,000 independent broker businesses throughout the U.S., with over 57,000 associated loan officers. *See* 2025 UWM 10-K Statement, *available at:* https://s21.q4cdn.com/406353517/files/doc_financials/2025/ar/2025_AR.pdf (last accessed Oct. 22, 2026). The Court may take judicial notice of this publicly available

allegations are instead made "upon information and belief," without supporting facts. (*Id.* ¶¶ 47, 51, 81.) Indeed, Plaintiff's own allegation that he asked Mr. Zakar for an email "so that [he] could identify the company that was calling and texting him" (*id.* ¶ 69) confirms that Plaintiff did not know who was behind the communications. A single email from a single caller cannot be bootstrapped into a plausible inference that SHL is responsible for every unwanted call and text Plaintiff received over more than a year from more than a dozen different numbers. *See Bank v. Spark Energy, LLC*, 860 F. App'x 205, 206 (2d Cir. 2021) (affirming dismissal of TCPA claim because, "[a]lthough [plaintiff] allege[d] that [defendant] initiated telephone calls" at issue, he failed to allege any detail about the calls, rendering the allegations impermissibly conclusory); *Hicks v. Alarm.com Inc.*, No. 20-cv-532, 2020 WL 9261758 at *4-5 (E.D. Va. Aug. 6, 2020) (dismissing TCPA claim where the complaint contained no plausible facts "detailing [defendant's] involvement in placing any calls" beyond "nonconclusory factual allegations").

Stripped of its conclusory attributions, the Complaint alleges at most one call from SHL: the call from (936) 213-0472. One call is insufficient as a matter of law, because § 227(c)(5) requires "more than one telephone call within any 12-month

---

information because it is "not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also* Fed. R. Evid. 201(c)(2) (court "must take judicial notice if a party requests it and the court is supplied with the necessary information").

period by or on behalf of the same entity." 47 U.S.C. § 227(c)(5). Counts I and II therefore fail, and Count III, which is wholly derivative of those claims (*see* Section IV.D, *infra*), fails with them.

**B. Text Messages Are Not Actionable Under the DNC Provisions.**

Plaintiff's claims fail to the extent they are predicated on text messages. By its plain language, 47 U.S.C. § 227(c)(5), which provides the private right of action for violations of both DNC Provisions at issue (based on 47 C.F.R. §§ 64.1200(c) and 64.1200(d), respectively[3]), is limited to "telephone call[s]." 47 U.S.C. § 227(c)(5) (private right of action to "[a] person who has received more than one telephone call within any 12-month period"). Before the Supreme Court abolished *Chevron* deference in *Loper Bright*, courts followed the 2003 FCC Order declaring, in the context of § 227(b)(1) (a different provision than § 227(c)(5), governing autodialer/prohibited technology calls), that telephone calls as referenced in TCPA included texts. *See* 2003 Order, 18 FCC Rcd. 14014, 14116 ¶ 165. But as the Supreme Court has made clear last year, district courts are not "bound by the FCC's interpretation of the TCPA," and instead must interpret the statute "under ordinary

---

[3] Although § 64.1200(e) purports to extend these regulations to text messages, Plaintiff cannot rely on those regulations if the statute does not provide a private right of action in the first instance. *See Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 901–02 (C.D. Ill. 2025) (acknowledging that the regulations purport to cover text messages but dismissing plaintiff's claim because Section 227(c) of the TCPA does not provide a private right of action covering text messages).

principles of statutory interpretation." *McLaughlin Chiropractic Associates, Inc.*, 606 U.S. at 158. Prior to *McLaughlin*, courts viewed FCC orders as effectively dispositive at the district-court level under a statute known as the Hobbs Act. *See, e.g.*, *Adamchik v. Credit Control Servs., Inc.*, 832 F. Supp. 2d 744, 748 & n. 13 (W.D. Tex. 2011) ("under the Hobbs Act, this Court has no jurisdiction to review the FCC's rule"). *McLaughlin* eliminated this line of authority. 606 U.S. at 168. This shift in the legal landscape has left circuit courts and district courts to reassess whether Section 227(c)(5)'s reference to "telephone call[s]" also encompasses texts.

Most significantly, the Seventh Circuit recently became the first federal circuit court to squarely address this question, concluding that "§ 227(c)(5) does not permit plaintiffs to sue for the receipt of unwanted texts." *Steidinger v. Blackstone Med. Servs.*, 182 F.4th 532, 534 (7th Cir. July 14, 2026). In *Steidinger*, the Seventh Circuit conducted a thorough textual analysis and concluded that "telephone call" as used in § 227(c)(5) does not encompass text messages. The court began with the statute's text, interpreting it "in accord with the ordinary public meaning of its terms at the time of its enactment." *Id.* at 535 (quoting *Bostock v. Clayton County*, 590 U.S. 644, 654 (2020)). In 1991, when the TCPA was enacted, Webster's Dictionary defined "telephone" as "[a]n instrument for reproducing sounds at a distance" and "call" as "to get or try to get into communication by telephone." *Id.* at 535–36 (quoting Merriam-Webster New Collegiate Dictionary (9th ed. 1990)). Thus, "in 1991, a

'telephone call' referred to communication via sound. Text messages do not reproduce sounds, suggesting that they do not qualify as a new application of telephone call within the meaning of that term." *Id.* at 536; *see also Richards v. Fashion Nova, LLC*, 2026 WL 847568, at *2 (S.D. Ind. Mar. 26, 2026) ("[T]elephone calls involve the use of sounds and a voice. . . . And a text message does not require that a person pick up a call, listen to a voice, or tie up their phone's line."). As courts have recognized, "[n]o normal person refers to a text message, or thinks of a text message, as a 'call.'" *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025).

The Seventh Circuit further explained that the surrounding provisions of § 227 confirm that "telephone call" does not include text messages. Sections 227(c)(1) through (c)(4) consistently use the term "telephone solicitation," which the TCPA defines as "the initiation of a telephone call ***or message***." 47 U.S.C. § 227(a)(4) (emphasis added). Yet § 227(c)(5) only creates a private right of action for "telephone call[s]"—it "doesn't mention telephone messages, nor does it use the more encompassing term, telephone solicitation." *Steidinger*, 2026 WL 2028517, at *2. Because "Congress used a different term in these two subsections of § 227, it intended a different meaning." *Id.* (citing *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 457–58 (2022)). As the Seventh Circuit concluded, "[t]he best reading of § 227(c)(5) is therefore that it provides a narrower remedy than recovery for all forms of

telephone solicitation; plaintiffs may sue after receiving unwanted telephone calls, but not unwanted telephone solicitations (which include not merely calls but also messages)." *Id.*; *see also Richards*, 2026 WL 847568, at *3 ("If 'telephone call' already included 'calls and messages,' then the TCPA's definition of 'telephone solicitation' would be redundant.").

At the district court level, the majority of the decisions have reached the same conclusion as the Seventh Circuit in *Steidinger*. *See, e.g.*, *Stockdale v. Skymount Prop. Grp., LLC*, 825 F. Supp. 3d 622, 625–26 (N.D. Ohio 2026); *Ankrah v. Streamline Funding, LLC*, No. 1:26-CV-00784-JPB, 2026 WL 3027138 (N.D. Ga. Sept. 29, 2026); *Radavansky v. 1st Class Medical*, No. 25-CV-03796-PAB-STV, 2026 WL 2858562 (D. Colo. Sep. 23, 2026); *Card v. R.J. Reynolds Tobacco Holdings, Inc.*, No. 1:26-CV-433, 2026 WL 2673068 (M.D.N.C. Sept. 3, 2026); *Conrad v. Hart Consumer Products, Incorporated*, No. 4:24-CV-307-CLM, 2026 WL 2741623 (N.D. Ala. Sept. 16, 2026); *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 901-02 (C.D. Ill. 2025); *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1275-76 (N.D. Fla. 2025); *James v. Smarter Contact, Inc.*, 828 F. Supp. 3d 1367 (M.D. Fla. Mar. 31, 2026); *Radvansky v. 1-800-Flowers.com, Inc.*, 2026 WL 456919, at *4 (N.D. Ga. Feb. 17, 2026); *Richards v. Fashion Nova, LLC*, 2026 WL 847568, at *5 (S.D. Ind. Mar. 26, 2026); *Anthony v. Brian Mktg. Grp.*, No. 24-80800-CIV, 2026 WL 2685650, at *10-12 (S.D. Fla. Sept. 11, 2026); *Phillips v. GJD Stars*

*Inc.*, No. 26-61910, 2026 WL 3060556, at *3 (S.D. Fla. Sept. 18, 2026).

District courts within the Sixth Circuit have adopted this same interpretation. *See Stockdale*, 825 F. Supp. 3d at 625–26. This interpretation is reinforced by Congress's 2019 amendment, adding "text message" to Section 227(e)(8)(C), governing caller ID requirements, while leaving Section 227(c)(5) unchanged. *Radvansky*, 2026 WL 456919, at *3; *see Bruce v. Adams & Reese, LLP*, 168 F.4th 367, 383 (6th Cir. 2026) ("[W]hen Congress deliberately uses different words, we presume those words to have different meanings."). Congress's use of the term "text message" in other provisions of the TCPA also weighs heavily against interpreting the term "call" to also include text messages. "In a given statute, … different terms usually have different meanings." *Pulsifer v. United States*, 601 U.S. 124, 149 (2004). Interpreting "call" to include "text messages" would render meaningless Congress's delineation between calls and text messages in § 227(e). *Trim v. Reward Zone USA LLC*, 76 F.4th 1157, 1162 (9th Cir. 2023) ("If voice calls encompassed text messages, the inclusion of the term text message would be surplusage").

Here, Plaintiff's claims rest heavily on text messages. The Complaint alleges that Plaintiff received text messages beginning June 5, 2025, from "Brent with the VA/FHA Loan Tracking Team" (Compl. ¶¶ 43–46), followed by additional texts on August 2, 2025, November 17, 2025, December 1 and 11, 2025, and February 16, 2026 (*id.* ¶¶ 59–64, 72), as well as numerous additional text messages continuing

through August 2026 (*id.* ¶¶ 82–83). Because the TCPA's language is clear and applies only to "telephone call[s]," the allegations regarding text messages cannot support a right of action under Section 227(c)(5).

Furthermore, the text-message defect compounds the attribution defect discussed in Section IV.A. Once the text messages are excluded, what remains are live calls from a series of different numbers. And once the calls that Plaintiff cannot plausibly attribute to SHL are also excluded, only one call remains: the single call from (936) 213-0472 in which Plaintiff spoke with Mr. Zakar. (Compl. ¶¶ 65–71.) Plaintiff does not allege any other call from that number or from Mr. Zakar. With both filters applied, Plaintiff has not alleged "more than one telephone call within any 12-month period by or on behalf of" SHL, 47 U.S.C. § 227(c)(5), and Counts I and II should be dismissed in their entirety.

### C. Plaintiff Fails to State a Claim Under the DNC Provisions Because His Cell Phone Is Not a "Residential Telephone."

Plaintiff's claims under the DNC Provisions also fail because the DNC provisions apply only to "residential telephone subscribers," and the communications at issue were sent to Plaintiff's cell phone. (Compl. ¶¶ 39–40.)

The FCC promulgated the DNC Provisions in order to "protect ***residential telephone subscribers'*** privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1) (emphasis added); *Cunningham v. Sunshine Consulting Grp., LLC*, 2018 WL 3496538, at *6 (M.D. Tenn. July 20,

2018); *Anthony*, 2026 WL 2685650, at *3, *6; *Koeller*, 2026 WL 2935851, at *1, *3; *see also Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (explaining that Congress enacted the TCPA to protect consumers from "the proliferation of intrusive, nuisance [telemarketing] calls ***to their homes***") (emphasis added).

Other courts addressing related TCPA provisions have reached the same conclusion about the distinction between cellular and residential telephones. In *Morgan v. U.S. Xpress, Inc.*, the court held that "the structure and language of the TCPA demonstrate that calls made to a cell phone are not calls made to a 'residential telephone line'" under § 227(b)(1)(B). 2018 WL 3580775, at *1 (W.D. Va. July 25, 2018). Similarly, in *Moore v. Triumph CSR Acquisition, LLC*, the court held that "courts widely hold that a cell phone is not a 'residential telephone line' within the meaning of subsection 227(b)(1)(B)." 2023 WL 8601528, at *2 (N.D. Ill. Dec. 12, 2023). The court stated memorably that "a residential phone is a home phone that is hard-wired into the building. It means a land-line. It is ***residential*** in a very literal sense," and emphasized that "even the strongest addiction to a cell phone cannot transform it into a residential phone." *Id.* The *Moore* court relied on the Supreme Court's treatment in *Barr v. American Ass'n of Political Consultants*, 591 U.S. 610 (2020), which the court read as taking the distinction between cellular and residential phones as a given. *Moore*, 2023 WL 8601528, at *2. While *Morgan* and *Moore* addressed § 227(b)(1)(B) rather than the DNC provision under § 227(c), their

reasoning about the statutory distinction between "cellular" and "residential" applies with equal force to the meaning of "residential" under § 227(c).

The reading cabining the DNC Provisions to residential phones as opposed to cell phones follows basic canons of statutory construction: "a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute." *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006). Congress used the term "residential telephone" in §§ 227(b)(1)(B) and 227(c)(1), while elsewhere expressly referring to "cellular telephone service." *See* 47 U.S.C. §§ 227(b)(1)(A)(iii), (b)(2)(C), (b)(2)(H). Courts have recognized this "clear distinction" between TCPA provisions governing cell phones and those limited to residential lines. *See Iniguez v. CBE Grp.*, 969 F. Supp. 2d 1241, 1249 (E.D. Cal. 2013); *Kapp v. E. Wisc. Water Conditioning Co.*, 2021 WL 778168, at *4 (E.D. Wisc. Mar. 1, 2021) ("While the defendants cite many cases that support the proposition that cell phones and residential landlines are distinct under the TCPA, they need not: such a distinction is clear from the text of the statute.").

Courts have recently applied this reasoning to the DNC provisions themselves. For example, in *Koeller*, 2026 WL 2935851, the court exercised its independent judgment following *Loper Bright* and held that 47 U.S.C. § 227(c)(5) does not provide a private right of action for cellular telephone subscribers, because the DNC Provisions protect only "residential telephone subscribers." Because the

plaintiff alleged only that he was contacted on his cell phone, the court dismissed his § 227(c)(5) claim for failure to state a claim. *Id.* at *1, *3. Similarly, in *Anthony*, 2026 WL 2685650, the court refused to enter a default judgment on a claim based on unsolicited text messages sent to the plaintiff's cell phone. *Id.* at *7–10. The court concluded both that cell phones are not "residential telephone subscribers" under § 227(c), *id.*, and that text messages are not actionable "telephone calls" under § 227(c)(5), rejecting the FCC's broader reading, *id.* at *10–12.

Here, Plaintiff alleges that his telephone number is a "residential telephone number" that "is used for residential purposes and is not associated with a business." (Compl. ¶¶ 39–40.) But that label is a "legal conclusion couched as a factual allegation," which the Court need not accept. *Iqbal*, 556 U.S. at 678. Plaintiff never alleges that the number is a landline, and his own allegations—a Rhode Island number used in Texas, text messages sent and received, and a call taken "in a meeting"—show that it is a mobile device. (*See* Section II.A, *supra*; Compl. ¶¶ 14, 43–44, 69, 82–83.) Because Plaintiff cannot plausibly allege that he received communications on a residential telephone—i.e., a landline—his TCPA claims should be dismissed. *Koeller*, 2026 WL 2935851, at *1, *3 (explaining that Congress enacted the TCPA to protect consumers from "the proliferation of intrusive, nuisance [telemarketing] calls ***to their homes***").

### D. Count III Under Texas Business & Commerce Code § 305.053 Fails

**Because It Is Entirely Derivative of the TCPA Claims.**

Count III of the Complaint asserts a claim under Texas Business & Commerce Code § 305.053. Under this statute, "[a] person who receives a communication that violates 47 U.S.C. Section 227, a regulation adopted under that provision, or Subchapter A[4] may bring an action in this state against the person who originates the communication." Texas Business & Commerce Code § 305.053. This claim is entirely derivative of the federal TCPA claims and must be dismissed if Counts I and II are dismissed. Because the statute is expressly derivative of the federal TCPA, courts have consistently held that § 305.053 claims "rise and fall" with the underlying federal claim. *Cherkaoui v. Santander Consumer USA, Inc.*, 32 F. Supp. 3d 811, 816 (S.D. Tex. 2014) ("[I]f no violation of the TCPA exists, there is no violation of the Texas TCPA."); *see also Callier v. GreenSky, Inc.*, No. EP-20-CV-00304-KC, 2021 WL 2688622, at *5 (W.D. Tex. May 10, 2021) (explaining that "the elements of a § 305.053 claim correspond to the necessary elements for a TCPA claim"). This derivative relationship means that any pleading deficiency that defeats the underlying TCPA claim will also defeat the § 305.053 claim. Multiple district

[4] Subchapter A of Chapter 305 of the Texas Business & Commerce Code does not apply here and provides no independent basis for Count III. The Complaint does not identify any provision of Subchapter A that SHL allegedly violated, nor does it plead any facts directed to the elements of a Subchapter A violation. Instead, Count III is expressly premised on the same alleged conduct, and the same alleged violations of 47 U.S.C. § 227 and its implementing regulations, that underlie Counts I and II.

courts in Texas have applied this principle. *See Horton v. Nat'l Republican Senatorial Comm.*, No. 3:22-CV-1000-G-BK, 2023 WL 372066, at *4 (N.D. Tex. Jan. 23, 2023) (dismissing § 305.053 claim because plaintiff "failed to provide sufficient facts to plead a TCPA § 227(b)(1)(A) violation"); *Hunsinger v. Offer, LLC*, No. 3:21-CV-2846-BH, 2022 WL 18143951, at *6 (N.D. Tex. Dec. 7, 2022) (dismissing § 305.053 claim because plaintiff "failed to state a plausible TCPA claim"); *Callier v. Nat'l United Grp., LLC*, No. EP-21-CV-71-DB, 2022 WL 20046134, at *4 (W.D. Tex. Jan. 26, 2022) (same).

Here, every argument supporting dismissal of Counts I and II—attribution, more than one call in a twelve-month period, text messages, and the residential-telephone requirement—flows directly through to Count III. Because Plaintiff has failed to plead a violation of the TCPA or a regulation adopted under it, Count III should be dismissed.

Moreover, to the extent Count III survives as a derivative of Plaintiff's remaining TCPA claims, Plaintiff may not recover duplicative statutory damages under both the federal TCPA and § 305.053(a) for the same violations. Texas's "one-satisfaction rule" prohibits stacking statutory damages from both statutes. *See Thomas v. Elite Legal Practice PC*, No. CV 25-10854-MWF, 2026 WL 1048217, at *5 (C.D. Cal. Mar. 23, 2026) (dismissing demand for duplicative statutory damages under § 305.053 under Texas "one-satisfaction rule"); *Busbee v. ServiceToday!*, No.

4:24-CV-00364-P, 2024 WL 4428989, at *4 (N.D. Tex. Oct. 4, 2024) ("[B]ecause [plaintiff] can recover damages under the TCPA, the one-satisfaction rule prohibits him from recovering under Section 305.053 for the same violations.").

### E. Count IV Fails Because § 302.101 Creates No Freestanding Private Right of Action and Plaintiff Has Not Satisfied the DTPA Requirements That Govern Any Private Claim.

Count IV alleges that SHL violated Texas Business & Commerce Code § 302.101 by making telephone solicitations to Plaintiff without holding a registration certificate from the Texas Secretary of State. (Compl. ¶¶ 214–25.) According to that statute, "[a] seller may not make a telephone solicitation from a location in this state or to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code Ann. § 302.101(a).

The claim fails at the threshold. Section 302.101 is a registration requirement, not a cause of action. Chapter 302 makes a violator "subject to a civil penalty," Tex. Bus. & Com. Code Ann. § 302.302(a), and the only private enforcement avenue is through § 302.303, which permits "[a] person ***injured*** by a violation of this chapter" to sue for injunctive relief and actual damages "***in a manner provided for an action under the [DTPA]***." *Id.* § 302.303 (emphases added). Private enforcement is therefore available only to an "injured" person and only through the DTPA's framework.

These requirements create at least two fatal problems for Plaintiff's claim. ***First***, Plaintiff has not pleaded DTPA consumer standing. The DTPA "grants consumers a cause of action for false, misleading, or deceptive acts or practices." *Cushman v. GC Servs., LP*, 657 F. Supp. 2d 834, 842 (S.D. Tex. 2009). "The elements of a DTPA cause of action are: (1) the plaintiff is a consumer; (2) the defendant committed acts 'in connection with the purchase or lease of any goods or services'; (3) the defendant's acts were false, misleading or deceptive; and (4) the acts were a producing cause of plaintiff's injuries." *Id.* A "consumer" may also "bring a cause of action under this subchapter by another law," i.e. a tie-in statute. *See* Tex. Bus. & Com. Code § 17.50(h).

Thus,"[t]o meet the DTPA's standing requirement, a complaining party must plead and prove that he or she is a 'consumer' under the Act." *Jones v. Star Houston, Inc.*, 45 S.W.3d 350, 356 (Tex. Ct. App. 2001); *Dawson v. Bank of Am., N.A.*, 605 F. App'x 263, 265 (5th Cir. 2015) ("[C]onsumer status is an essential element of a DTPA cause of action."). That requires facts showing that the plaintiff "has sought or acquired goods or services by purchase or lease" and that those goods or services "form the basis of the plaintiff's complaint." *Jones v. Star Houston, Inc.*, 45 S.W.3d at 356; *accord McLeod v. Gyr*, 439 S.W.3d 639, 649 (Tex. Ct. App. 2014). The Complaint alleges only that Plaintiff received telephone solicitations. It does not allege that Plaintiff purchased, leased, or sought to acquire any good or service from

SHL, and receiving an unwanted call is not a consumer transaction within the meaning of the DTPA. *See, e.g.*, *Cushman v. GC Servs., LP*, 657 F. Supp. 2d 834, 844 (S.D. Tex. 2009) (plaintiff who received unwanted calls "does not qualify as a 'consumer' and does not have standing to bring suit under the DTPA").

***Second***, Plaintiff has not alleged a cognizable injury. Section 302.303 reaches only "[a] person injured" and authorizes only "actual damages," and the DTPA likewise requires that the challenged conduct be "a producing cause of economic damages or damages for mental anguish." *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 857 (Tex. Ct. App. 2005) (citing Tex. Bus. & Com. Code Ann. § 17.50(a)(1)). Where standing is statutorily conferred, "[t]he plaintiff must allege and show how he has been injured or wronged within the parameters of the language used in the statute." *Id.* at 851. Applying that rule, courts have affirmed dismissal of a DTPA claim where the plaintiffs had "not pleaded facts establishing the existence of economic damages." *Id.* at 859 n.14; *see id.* at 861. Plaintiff here pleads no pecuniary loss and no mental anguish—only a per-call statutory sum. That is not "actual damages," and it confers no standing. Because § 302.101 confers no freestanding private right, and Plaintiff has pleaded neither consumer standing nor actual damages needed to invoke the DTPA, Count IV should be dismissed.

## V. CONCLUSION

The Court should dismiss the Complaint with prejudice.

Dated: October 22, 2026

Respectfully submitted,

By: */s/ Irina Kashcheyeva*

Irina Kashcheyeva (P72575)
Raymond J. McVeigh (P84799)
FOLEY & LARDNER LLP
500 Woodward Avenue, Suite 2700
Detroit, Michigan 48226
(313) 234-7100
ikashcheyeva@foley.com
rmcveigh@foley.com
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2026, I caused to be electronically filed the foregoing paper with the Clerk of the Court, which will send notification of such filing to all counsel of record via the Court's ECF system.

By: *<u>/s/ Irina Kashcheyeva</u>*
Irina Kashcheyeva (P72575)
Raymond J. McVeigh (P84799)
FOLEY & LARDNER LLP
500 Woodward Avenue, Suite 2700
Detroit, Michigan 48226
(313) 234-7100
(313) 234-2800
ikashcheyeva@foley.com
rmcveigh@foley.com
*Counsel for Defendant*